# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON

**PATRICIA LYNN WONDOLOWSKI,**

   **Plaintiff,**

**v.**               **CIVIL ACTION 3:14-cv-28923**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

   **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12) and Brief in Support of Defendant's Decision (ECF No. 15).

### Introduction

On July 27, 2011, Claimant filed a Title II application for disability and disability insurance benefits (DIB) and a Title XVI application for supplemental security income (SSI).  In both applications, Claimant alleged disability beginning June 8, 2011.  Both claims were denied initially on February 23, 2012, and upon reconsideration on May 4, 2012.  On May 14, 2012, Claimant filed a written request for a hearing.  Claimant appeared and testified at a hearing held before an Administrative Law Judge (ALJ) on April 16, 2013, in Huntington, West Virginia.  The ALJ left the record open through April 30, 2013, to allow Claimant time to submit additional medical records.  On April 24, 2013, claimant submitted a note from a physician which the ALJ admitted into evidence as Exhibit 38F. On June 20, 2013, the ALJ denied Claimant's applications for disability (Tr. at 312-313). Claimant requested the Appeals Council (AC) review the ALJ's decision and grant her more time to submit new evidence before the AC rules on the request.  On July 10, 2014, the AC granted Claimant's request and gave Claimant 25 days to submit new and

material evidence before making a determination (Tr. at 9-10).  A Notice of Appeals Council Action dated September 24, 2014, notified Claimant that her request for review of the ALJ's decision was denied.  The Notice listed records submitted by the Claimant which were not found to be new as it was duplicative of evidence already on the record and not regarding the relevant timeframe (Tr. at 2).  Included with the Notice was an Order of Appeals Council listing 5 exhibits consisting of additional evidence submitted by Claimant which was made part of the record (Tr. at 5-7).  Claimant filed civil action before this Court.

On February 29, 2016, the undersigned entered Proposed Findings and Recommendation recommending the District Judge grant Plaintiff's Motion for Judgment on the Pleadings, reverse the decision of the Commissioner and remand the case for further proceedings (ECF No. 17).  Defendant filed Objection to Proposed Findings and Recommendations by Magistrate Judge on March 18, 2016 (ECF No. 20).  On March 30, 2016, the Honorable Judge Robert C. Chambers granted Defendant's objection and recommitted this case to the undersigned Magistrate Judge for additional findings and recommendations consistent with Judge Chambers' Memorandum Opinion and Order (ECF No. 21).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520, 416.920 (2014). If an individual is found "not disabled"

at any step, further inquiry is unnecessary. *Id.* § 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of June 8, 2011, and meets the insured status requirements of the Social Security Act through December 31, 2014 (Tr. at 303). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbar spine; chronic obstructive pulmonary

3

disease (COPD); and myofascial pain. (*Id.*).  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 307).  The ALJ then found that Claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. at 312).  Specifically, the ALJ stated that at the light level of exertion Claimant can perform the positions of a routing clerk, office helper-clerical and clerical machine operator.  (*Id.*). On this basis, benefits were denied.

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was born on March 17, 1962 (Tr. at 461). Claimant lives with her sister (Tr. at 462). She last completed the tenth grade and has unsuccessfully taken the GED twice (Tr. at 332). Claimant has prior work experience as a home health aide although she is not certified as a nurse's aide (Tr. at 357).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly analyze Claimant's medical treatment history when the ALJ issued her unfavorable decision, disregarded her treating physicians' opinion and substituted her own opinion (ECF No. 12). Claimant argues that the ALJ failed to properly consider Claimant's pain and perform any credibility determination. Claimant asserts that the ALJ did not discuss or consider the side of effects of her many medications. Also, Claimant argued that the ALJ failed to consider the combination of her impairments. Claimant asserts that the ALJ failed to take into consideration her obesity when considering her ability to sustain gainful employment in rendering the decision. Lastly, Claimant asserts that the ALJ failed in her duty to produce evidence sufficient to rebut the presumption of disability.

Defendant asserts that the ALJ properly analyzed Claimant's diagnosis of myasthenia gravis at each step of the sequential evaluation process (ECF No. 15). Defendant asserts that the substantial evidence supports the ALJ's step two determination and the ALJ's finding that Claimant did not meet or medically equal listing 11.12. Defendant asserts that substantial evidence supports the ALJ's assessment of Dr. Shah's opinion. Also, Defendant avers that the ALJ properly assessed Claimant's pain and credibility in assessing Claimant's residual functional capacity. Defendant asserts that the ALJ considered Claimant's impairments separately and in combination and properly evaluated Claimant's obesity throughout the sequential evaluation. Defendant avers

5

that substantial evidence supports the ALJ's conclusion that Claimant was not disabled.

Medical Record

The Court adopts the medical record findings asserted by Claimant and Defendant to the extent as follows (ECF Nos. 12 & 15):

On July 8, 2011, Claimant presented to the emergency room (ER) at St. Mary's Medical Center (St. Mary's) complaining of shortness of breath, a non-productive cough, increasing fatigue, unintentional weight loss, and pain (Tr. 678). Claimant reported that she smoked two to three packs of cigarettes a day for 35 years, and that she occasionally smoked marijuana (Tr. 679). A toxicity screen was positive for benzodiazepines, cannabinoids, and opiates (Tr. 706). On examination, Claimant's facial structure was symmetric without drooping; her pupils were equal, round, and light-reactive; her extraocular movements were intact; she had regular respirations, with no rales or rhonchi; a regular heart rate and rhythm with no murmurs or rubs; no edema in the extremities; equal strength bilaterally; full range of motion; and intact muscle strength, coordination, and sensation (Tr. 708). Claimant's pain was alleviated with Percocet (Tr. 681), and a CT scan of Claimant's chest revealed benign thymomas (Tr. 714-715).

Claimant returned to St. Mary's ER on July 22, and July 28, 2011 complaining of chest pain (Tr. 634, 641). On examination, Claimant was in no distress, had clear lungs, a regular heart rate and rhythm, no swelling in her extremities, a normal back, full range of motion, no motor or sensory deficits, and normal reflexes (Tr. 634, 642). On July 22, 2011, Claimant indicated that she had been taking hydrocodone to relieve her pain, but that she ran out the previous day (Tr. 661). An electrocardiogram (EKG), chest x-rays, blood chemistry panels, and cardiac labs were normal, revealing no acute disease, normal lungs, and normal heart (Tr. 634). The records indicated that Claimant was referred to Dr. Chowdhury for surgical assessment (Tr. 643).

On July 28, 2011, Ijaz Ahmad, M.D., examined Claimant (Tr. 779). On examination, Claimant denied diplopia or difficulty with her voice or chewing (Tr. 779). Claimant was awake, alert, and oriented; had a normal cranial nerve examination, and could hold her arm for 45 seconds (Tr. 779). Dr. Ahmad indicated that Claimant had a history of thymic tumor, and recommended that she have additional blood work performed including a myasthenia profile, thyroid profile, and rapid nerve stimulation. (Tr.

779).

On August 6 and 10, 2011, Claimant returned to St. Mary's ER with chest pain; hospital notes indicated that Claimant "has had similar symptoms many times previously" and that "[D]rs. Choudry and Bir won't fill her pain meds, they told her to come to the ER" (Tr. 619). On examination, Claimant was in moderate distress, but her heart and respiratory rates were normal, her chest was non-tender, she had full range of motion in her extremities, and no edema (Tr. 620). Diagnostic studies including an EKG, chest x-ray, abdominal sonogram, CBC, blood chemistry, cardiac lab, and coagulation study were normal (Tr. 620). Claimant was assessed with atypical chest pain. Claimant returned to the ER on August 16, 2011, but a physical examination was still normal, and the diagnostic imaging was unchanged from prior examinations (Tr. 601).

On August 26, 2011, Claimant underwent robotic assisted thoracoscopic excision of her thymomas with Nepal Chowdhury, M.D. (Tr. 730). Claimant was discharged in stable condition five days after surgery, denied any pain or shortness of breath, and was able to ambulate with minimal assistance (Tr. 735).

On September 8, 2011, Claimant presented to the ER at Three Rivers Medical Center (Three Rivers) complaining of pain with no known injury (Tr. 963). On examination, Claimant was in moderate distress and exhibited diffuse tenderness of the chest wall, but equal and clear lung sounds bilaterally, a regular sinus rhythm, full back range of motion without tenderness, full range of motion in her extremities, and had a normal neurological exam (Tr. 963-64). During a September 15, 2011 follow-up appointment from the thymoma surgery, Claimant reported that she was doing much better, and that her residual pain was improving (Tr. 730).

On September 30, 2011, Claimant returned to Three Rivers ER complaining of chest pain (Tr. 943). A CT scan of Claimant's chest indicated moderate left side pleural effusion, but a clear right lung and normal heart size (Tr. 952). Claimant refused admission for observation (Tr. 943). Two weeks later, on October 16, 2011, Claimant returned to the Three Rivers Medical Center ER and reported being out of pain medication (Tr. 910-11).

On October 26, 2011, Claimant returned to Dr. Ahmad with complaints of fatigue since her thymectomy (Tr. 778). Dr. Ahmad noted that Claimant had failed to obtain the blood work he recommended in July, including the myasthenia gravis profile (Tr.

778).   On examination, Claimant had no fatigue of the voice, no ptosis, and could elevate her arm for more than a minute (Tr. 778). Dr. Ahmad indicated that, "at the present time, there is a question of myasthenia gravis," and recommended, for a second time, that Claimant undergo additional blood work including the myasthenia gravis profile (Tr. 778).

Claimant presented to the ER at Three Rivers on October 28, 2011 complaining of a migraine, and reported that she had run out of pain medication (Tr. 905).  On examination, Claimant's chest was non-tender to palpation; she was in no respiratory distress; had a normal heart rate and rhythm; a normal back with no costavertebral angle tenderness (CVAT); and normal joint range of motion with no swelling or deformities (Tr. 906).

Claimant followed up with by Arvinder S. Bir, M.D., on October 26, 2011 regarding her thymomas (Tr. 783).  Dr. Bir indicated that Claimant was very upset and had multiple complaints including tiredness, fatigue, weakness, and frustration regarding a recent "presumed diagnosis of myasthenia gravis" (Tr. 783).  On a review of systems, Claimant reported no chest pain or discomfort; no dyspnea, cough or wheezing; some muscle aches, but no muscle cramps or joint pain; no difficulty with balance; no numbness or tingling; and no anxiety, depression or sleep disturbance (Tr. 785). Claimant requested pain medication, and reported that she had gone to the ER several times but that "they will no longer treat her pain" (Tr. 783).  Dr. Bir advised Claimant that because she had benign thymoma pathology, he could not treat her chronic pain since it was not related to a malignancy (Tr. 784).  Claimant stated that "if she could not get any pain medication then she was going to leave" (Tr. 784).

Claimant began treating with Spencer Harris, D.O, on November 11, 2011 (Tr. 824).  She reported that she was taking Mestinon, which was beginning to help, but that she still had episodes where her muscles gave out (Tr. 824).  Dr. Harris indicated that Claimant was taking Lortab and Percocet through her different physicians, but "since they have cleared her surgery, they are no longer comfortable giving her this" (Tr. 824).  On examination, Claimant was in no distress; denied vision change or loss; had clear lungs with no wheezing, rales, or rhonchi; a regular heart rate and rhythm; and a normal neurological exam (Tr. 824-25).

Between November 2011 and January 2012, Claimant followed up with Dr. Harris for COPD, pain, and hypertension (Tr. 816-822).  Claimant denied chest pain, headaches and changes in

vision or vision loss, and reported that Lortab controlled her pain well (Tr. 816-820). Claimant's examinations were largely normal and revealed that she was in no distress; had intact extraocular muscles; equal pupils that were reactive to light; clear lungs; a regular heart rate and rhythm with no murmurs, rubs or gallops; no edema; normal gait and station; and grossly intact cranial nerves (Tr. 816-22).

In February 2012, Claimant started physical therapy (Tr. 855). In March 2012, Dr. Harris indicated that one of Claimant's physicians had recommended steroid injections, but that there were some questions secondary to myasthenia gravis, so she was treating with physical therapy and pain management (Tr. 852). Dr. Harris also indicated that Claimant had responded well to Lortab, and an examination on March 20, 2012 revealed that she was in no distress, with normal eyes, lungs and heart; normal gait and station; and only mild tenderness to palpation in the lumbar spine and some hypertonicity over the right paraspinal musculature (Tr. 853). Dr. Harris stated that Claimant was "benefitting somewhat from physical therapy" (Tr. 853).

On April 2 and 13, 2012, Claimant presented to Kentucky Heart Institute with complaints of chest pain (Tr. 917, 920). On April 13, 2012, Claimant reported that she "blacked out last Wednesday," but that she did not fall completely (Tr. 917). The treatment records note that "it is difficult to say whether or not she completely lost consciousness as the patient is somewhat of a difficult historian" (Tr. 917). Examinations during both visits indicate that Claimant was in no distress; had a normal eye examination; normal range of motion in the neck; a normal cardiovascular exam; normal pulmonary effort; and no edema (Tr. 919, 922). A stress test from April 6, 2012 was normal (Tr. 923).

On April 16, 2012, Claimant presented to the Three Rivers ER and reported a three to four month history of "near syncopal episodes" (Tr. 928, 986). Claimant stated that her symptoms were mild, she sustained no injuries, and felt normal (Tr. 928). The treatment notes indicated "positive myasthenia gravis_____," and that Claimant "has a history of noncompliance; we stopped giving her pain medicine at this time secondary to her failure of urine drug screen. It sounds like her neurologist kicked her out of her office as well secondary to not showing up for multiple appointments. Therefore, at this time, she does not have one of these" (Tr. 986). On examination, Claimant's extraocular muscles were intact; her pupils were equal and reactive to light and accommodation; she had unlabored respirations; a regular heart

rate and rhythm with no murmurs, rubs or gallups; intact cranial nerves; and full range of motion in her extremities and her back without tenderness (Tr. 929, 986). A carotid Doppler ultrasound indicated no hemodynamically significant flow limiting lesions (Tr. 991). Claimant was assessed with syncope and dehydration, treated with fluids, prescribed Mestinon, and advised to follow up with a neurologist (Tr. 929, 986).

On May 4, 2012, Porfirio Pascasio, M.D., reviewed the record and completed a physical residual functional capacity assessment of Claimant (Tr. 1000-07). Dr. Pascasio found that Claimant could occasionally carry 20 pounds, frequently lift 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday (Tr. 58). In addition, Dr. Pascasio found that Claimant had unlimited ability to push and pull; could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; and had to avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes and hazards; but that Claimant had no manipulative, visual, or communicative limitations (Tr. 1004).

Claimant was examined by J. Douglas Miles, M.D., Ph.D., on May 25, 2012 (Tr. 1014). Claimant reported blurry vision, swallowing problems, shortness of breath, COPD, and neck and back pain (Tr. 1017). On examination, Claimant had a clear chest; regular heart rate and rhythm; no edema in extremities; a normal neurological exam; no significant ptosis; full strength; normal bulk; normal muscle tone; intact sensation and coordination; a normal gait and arm swing; and no Romberg signs (Tr. 1018-19). Dr. Miles indicated that he "need[ed] to verify testing done already" to confirm the diagnosis of myasthenia gravis (Tr. 1021).

On September 11, 2012, Claimant presented to Three Rivers ER with complaints of chest pain (Tr. 1045). An x-ray revealed no acute disease and an EKG was normal (Tr. 1047). Claimant was treated with Neurontin, and provided with an "extending teaching focusing on medication administration" (Tr. 1054).

Claimant returned to Dr. Harris on September 17, 2012 and requested a refill of Neurontin (Tr. 1094). On examination, Claimant was in no distress, had clear lungs with some anterior congestion and an occasional wheeze; regular heart rate and rhythm; intact cranial nerves; no focal or sensory deficits and equal and symmetrical deep tendon reflexes (Tr. 1094). She was given a one-time refill of her Neurontin and was told to follow up with her

neurologist for any further medicine (Tr. 1095).

On October 1, 2012, Claimant complained to Dr. Harris of low back pain (Tr. 1092). Dr. Harris indicated that Claimant had previously been advised that because she had failed a drug screen and pill count in the past, they would no longer give her any controlled substances (Tr. 1092). Dr. Harris also indicated that, "today [Claimant] comes back carefully requesting 4 or 5 Lortab or Lorcet for pain for the next few days" (Tr. 1092). On examination, Claimant was in no distress, had clear lungs, a regular heart rate and rhythm, no peripheral edema, normal gait and station, no tenderness in the lumbar spine, and no hypertonicity (Tr. 1092).

On October 4, 2012, Claimant reported that her back pain was making sleep difficult (Tr. 1090). On exam, she was in no distress, exhibited a slightly antalgic gait and had mild tenderness to palpation in the lumbar spine, but no hypertonicity, a negative bilateral straight leg raising test, equal and symmetrical deep tendon reflexes, no focal or sensory deficits, and full strength bilaterally (Tr. 1090).

Claimant returned to Three Rivers ER on October 6, 2012 after a syncopal episode (Tr. 1138). She had a normal physical examination; an EKG was normal; and a chest x-ray revealed no acute disease (Tr. 1141). She followed up with Dr. Harris on October 9, 2012, who indicated that Claimant had a history of syncope, but that her carotid dopplers were normal; a stress test was negative; a tilt-table test was negative; and that she denied dizziness or vertigo (Tr. 1087).

On November 27, 2012, Claimant returned to Three Rivers ER and complained of knee, leg, foot, and neck pain following a syncopal event (Tr. 1115). On examination, Claimant was in no distress; her pupils were equal, round, and reactive to light; she had intact extraocular motion; her chest was non-tender to palpation; her lungs were normal; she had a regular heart rate and rhythm; her spine was nontender; she had normal range of motion without pain in her extremities (Tr. 1116-17). An EKG was normal, and revealed no evidence of ischemia or injury (Tr. 1117). X-rays revealed no fractures in the knees or fibula (Tr. 1117). Claimant was assessed with contusions in the right lower extremity, both knees, and left foot (Tr. 1117).

In December 2012, Claimant had a cardiac evaluation at the Kentucky Heart Institute (Tr. 1152). On examination, Claimant had normal range of motion in her neck and extremities, with no

11

edema or tenderness; a normal heart rate and rhythm; and normal breath sounds and effort (Tr. 1154). Claimant was assessed with hypertension and other chest pain (Tr. 1155).

In March 2013, Claimant was examined by Sai P. Gutti, M.D., for pain management (Tr. 1168). She reported pain in her back, left lower extremity, neck, and shoulders (Tr. 1168). Claimant denied chest pain, shortness of breath, edema, and weight gain or loss (Tr. 1168). On examination, she exhibited no neck swelling, a normal respiratory and cardiovascular exam, normal curvature of LS spine, moderate to severe tenderness in SI and lumbar facet joints with spasm, but full motor strength and deep tendon reflexes were 2+ at the knee and 1+ at the ankle (Tr. 1169). Dr. Gutti recommended a lumbar spine MRI, electrodiagnostic studies of Claimant's extremities, and prescribed Motrin, Neurontin and Lortab (Tr. 1169). Dr. Gutti also recommended physical therapy, but Claimant stated she was unable to do physical therapy (Tr. 1169).

A nerve conduction study conducted on April 1, 2013 indicated left superficial peroneal neuritis (a type of peripheral neuropathy) (Tr. 1174), and a lumbar spine MRI from April 10, 2013 revealed a left lateral disk bulge at L2-3, congenital canal stenosis with acquired stenosis at L4-5 due to ligament thickening, but a normal marrow signal, no focal disk herniation, and an unremarkable conus (Tr. 1227). The MRI results also indicated that the disk bulge was causing only mild neural foraminal narrowing (Tr. 1227).

On April 24, 2013, Sona K. Shah, M.D., completed a note indicating that Claimant had a "diagnosis of myasthenia gravis and will need lifelong medical care" (Tr. 1190). Specifically, Dr. Shah indicated that Claimant should not climb unprotected heights, work with open fire, swim without a lifejacket and lifeguard, or perform any activity that would injury the patient or someone else should she experience a loss of consciousness (Tr. 1190).

In May 2013, Claimant returned to Three Rivers ER complaining of back pain (Tr. 1229). Claimant reported that she had received steroid shots the previous week that "made everything worse" (Tr. 1229). On examination, Claimant had negative straight leg raising tests bilaterally, but paralumbar tenderness on the right with no spasm (Tr. 1294). Claimant refused Toradol, stating "why would I take another NSAID when the first one did not help" (Tr. 1229). Claimant was informed that Toradol was not an NSAID, but got upset and began cursing and stated that she "would be calling administrative staff in am, people come to the

12

ED 2 and 3 times a week and get morphine shots and she needs it" (Tr. 1229).  Claimant stated that she wanted to leave, and she was discharged a few minutes later (Tr. 1229).

<u>New Evidence</u>

On September 24, 2014, the Appeals Council denied Claimant's request for review. In doing so, the Appeals Council "found that this information does not provide a basis for changing the ALJ's decision" (Tr. at 1), therefore, "the ALJ's decision is the final decision of the Commissioner of Social Security in [Claimant's] case." (*Id.*)  The Appeals Council stated the following:

> We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of the evidence of record.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We considered medical records from Three Rivers Medical Center consisting of a heat CT dated April 16, 2012 (1 page)  and medical records from Kentucky Heart Institute dated December 11, 2012 (4 pages), however, this evidence is not new because they are duplicate to Exhibit 23F, page 11 and Exhibit 32F, pages 2, 3, 4 and 7 (respectively).
>
> We also looked at medical records from Three Rivers Medical Center dated July 7, 2013 through October 28, 2013 (56 pages), Three Rivers Medical Center dated October 27, 2013 through October 30, 2013 (56 pages), Three Rivers Medical Center dated July 7, 2013 (35 pages), Three Rivers Medical Center dated October 3, 2013 through May 12, 2014 (39 pages), St. Mary's Neurosurgery dated April 10, 2014 through April 15, 2014 (7 pages), Three Rivers Medical Center dated January 17, 2014 through May 9, 2014 (22 pages), Three Rivers Medical Center dated January 16, 2014 through June 10, 2014 (33 pages), and Three Rivers Medical Center dated July 22, 2013 through December 20, 2013 (31 pages).  The Administrative Law Judge decided your case through June 20, 2013. This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before June 20, 2013. (Tr. at 1-2).

On September 24, 2014, the Appeals Council received additional evidence which it made part of the record (Tr. at 6-7). The evidence consisted of the following exhibits:

| | |
|---|---|
| Exhibit 16E | Attorney Contentions – Paula L. Harbour dated September 22, 2013 (3 pages) |
| Exhibit 39F | Medical Records - Three Rivers Medical Center dated November 26, 2012 through January 15, 2013 (37 pages) |
| Exhibit 40F | Medical Records - Three Rivers Medical Center dated June 22, 2012 through April 10, 2013 (2 pages) |
| Exhibit 41F | Medical Records - Three Rivers Medical Center dated January 15, 2013 through May 14, 2014 (43 pages) |
| Exhibit 42F | Medical Records - Three Rivers Medical Center dated May 14, 2013 |

The Social Security's Hearing, Appeals and Litigation Manual (HALLEX) I-3-3-6 titled New and Material Evidence states that after an Administrative Law Judge (ALJ) issues a decision, the administrative record generally closes. This means that when the Appeals Council (AC) acts on a request for review, the AC usually considers only the evidence that was before the ALJ and the time period through the date of the ALJ decision. See 20 CFR 404.976(b) and 416.1476(b).

When a claimant or representative submits additional evidence in association with a request for review, the AC must determine whether it is new, material and relates to the period on or before the date of the ALJ decision. If the additional evidence meets these criteria, the AC will evaluate the entire record, including the additional evidence. The AC will review the case if it finds the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. See 20 CFR 404.970(b) and 416.1470(b). See HALLEX I-3-5-20 Consideration of Additional Evidence.

The AC's Notice of Appeals Council Action dated September 24, 2014, lists the newly submitted evidence that was found to be duplicative or "about a later time." For those reasons the AC found that the evidence listed in the notice did not affect the ALJ's decision. However, Claimant submitted other new evidence which the AC made part of the record as listed on the Order of Appeals Council (Tr. at 6). The newly admitted evidence reflected on the Order of Appeals Council includes, in part, the following:

- An Imaging Report of Claimant's lumbar spine dated June 22, 2012, from Three Rivers Medical Center in Louisa, Kentucky, reflects that "There are diffuse disk bulges noted from L2 through S1" (Tr. at 1228). There were no acute bony abnormalities or subluxations.

- Emergency Department records from Three Rivers Medical Center in Louisa, Kentucky, dated November 27, 2012, reflect that Claimant was seen after falling. Claimant complained of pain in her neck, right upper leg, right knee, left knee, left lower leg and left foot (Tr. at 1207). Claimant was discharged on November 28, 2012.

- On January 19, 2013, Claimant reported via ambulance to the Emergency Department at Three Rivers Medical Center with complaints of abdominal and flank pain (Tr. at 1259). The medical center's clinical impression reflects Dysuria (Tr. at 1260).

- On April 10, 2013, an imaging report from Saint Mary's Neurosurgery department reflects that Claimant complained of low back pain radiating into her left leg (Tr. at 1227). The imaging report reflected that there was mild degenerative spondylosis at L1-2, L2-3 and L4-5. (*Id.*) At the L2-3 level, there is left lateral disk bulging causing only mild neural foraminal narrowing. There is no focal disk herniation. There is underlying congenital canal stenosis (Tr. at 1249).

- On April 26, 2013, Claimant reported to Three Rivers Medical Center. The clinical impression reflects that she experienced a ligamentous sprain in her left shoulder (Tr.at 1236).

- On May 14, 2013, Claimant was taken to the Emergency Department at Three Rivers Medical Center in an ambulance for low back pain (Tr. at 229). The clinical impression reported that Claimant suffered from chronic low back pain, degenerative disk disease in her lumbar spine and radiculopathy (Tr. at 1294). An assessment of the visit reflects that Claimant was yelling and cussing about her need for a morphine shot (Tr. at 1230, 1293).

- On June 6, 2013, an Imaging Report from Three Rivers Medical Center reflects that Claimant experienced pelvic, lumbar, left knee, lateral left tibia and fibula and left foot pain after a fall (Tr. at 1273, 1278). The Imaging Report stated that "There is mild osteophyte formation at L2-3. There is some facet osteoarthritis at L5-S1" (Tr. at 1274). Three images were taken of Claimant's left foot to compare with images from November 27, 2012. The Imaging Report stated "There is no acute bony abnormality. There is an enthesopathy at the posterior inferior calcaneus (Tr. at 1275). The image of Claimant's lateral left femur demonstrated "some minimal osteophyte formation at the posterior patella" and "no acute bony abnormality or abnormal soft tissue calcification" (Tr. at 1276).

<u>Pain</u>

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. *Craig*, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. *Hyatt v.*

*Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990).   A claimant's symptoms, including pain, are

considered to diminish his capacity to work to the extent that alleged functional limitations are

reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4)

and 416.929(c)(4) (2014).   Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons. . . .  Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or
> other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any
> medication you take or have taken to alleviate your pain or other
> symptoms;
>
> (v) Treatment, other than medication, you receive or have received
> for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other
> symptoms (e.g., lying flat on your back, standing for 15 or 20
> minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and
> restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying
> medically determinable physical or mental impairment(s)--i.e., an impairment(s)
> that can be shown by medically acceptable clinical and laboratory diagnostic
> techniques--that could reasonably be expected to produce the individual's pain or
> other symptoms. * * * If there is no medically determinable physical or mental
> impairment(s), or if there is a medically determinable physical or mental
> impairment(s) but the impairment(s) could not reasonably be expected to produce

the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

*Craig* and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. *Craig*, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. *Craig*, 76 F.3d at 595. Nevertheless, *Craig* does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain

18

itself is not supported by objective medical evidence.

Discussion

Claimant asserts that the ALJ failed to properly consider her pain and perform any credibility determination.  Defendant avers that the ALJ properly assessed Claimant's pain and credibility in assessing her residual functional capacity.  The Fourth Circuit has held that when read in combination with the applicable regulation, *Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991),* reveals that a claimant need not show good cause when submitting new evidence to the Appeals Council:

> A claimant seeking a remand on the basis of new evidence under 42 U.S.C.A. § 405(g) (West 1983) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier.  There is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council.

*Wilkins*, 953 F.2d at 96 n.3; *see also* 20 C.F.R. § 416.1471(b) (2014).  Instead, "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins*, 953 F.2d at 95-96 (quoting *Williams,* 905 F.2d at 216.) Evidence is new "if it is not duplicative or cumulative."  *Id.* at 96 (citing *Williams*, 905 F.2d at 216).  "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."  *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)).

If new and material evidence is submitted after the ALJ's decision, the Appeals Council will consider the additional evidence if it relates to the period on or before the date of the administrative law judge's hearing decision. The Appeals Council will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight

of the evidence currently of record. *See* 20 C.F.R § 404.970(b). When the Appeals Council incorporates new and material evidence into the administrative record but denies review of the ALJ's findings and conclusions, the issue before this Court is whether the Commissioner's decision is supported by substantial evidence in light of "the record as a whole including any new evidence that the Appeals Council specifically incorporated into the administrative record." *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (remanding for rehearing pursuant to sentence four of 42 U.S.C. § 405(g)) (quoting *Wilkins*, 953 F.2d at 96). If the ALJ's decision is not supported by substantial evidence, then a sentence four remand is appropriate.

In *Snider v. Colvin*, 2013 U.S. LEXIS 130456 (S.D.W.V. Sept.12, 2013), the court discussed the process to be followed when a claimant presents new evidence to the Appeals Council, quoting 20 C.F.R. § 404.970(b):

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight **o**f the evidence currently of record. *Id.,* at 12-13.

As noted in the *Snider* decision, "[e]vidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome." *Id.* at 13, citing *Wilkins v. Secretary, Dep't of Health and Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991) (en banc), *superseded by statute on other grounds,* 20 C.F.R. § 404.1527.  The *Snider* court outlined the Appeals Council's obligations this way:

> When confronted with new and material evidence, the Appeals Council must then evaluate the entire record including the new and material evidence. *Meyer v. Astrue,* 662 F.3d 700,704-05 (4th Cir.

2011). After this evaluation, if the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence currently of record, it must grant the request for review and either remand the case to the ALJ or issue its own decision on the merits. *Id* "[I]f upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." *Id.*

Thus, in cases such as this, where a claimant has submitted additional evidence to the Appeals Council and the Appeals Council considered that evidence and made it part of the record, this Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. *Id.; see Wilkins v. Secretary, Dep't of Health and Human Servs.,* 953 F.2d at 95-96. *Snider, Id., at 13-15.* In the *Snider* case, the claimant had submitted evidence to the Appeals Council and in denying review the Appeals Council stated that it had considered the newly-submitted medical evidence. *Snider, Id.*, at 15. The *Snider* court went on to state that:

> [a]s such, the Appeals Council necessarily considered this evidence new and material, and that it related the period on or before the date of the ALJ's decision. Notwithstanding the new evidence, however, the Appeals Council advised Plaintiff that his newly-submitted medical evidence "does not provide a basis for changing the [ALJ's] decision." *Snider*, *id.*, at 15-16.

The *Snider* court cited the holding of *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011) that "the Appeals Council's failure to state its rationale for its decision to deny review is not error as long as the record provides an 'adequate explanation of [the Commissioner's] decision'" *Snider, id.*, at 16, citing *Meyer, id.*, at 707. However, as noted by the *Snider* court, the *Meyer* court did remand that case to the Commissioner "because the new evidence was evidence from Meyer's treating physician, evidence afforded special weight under [the regulations]" *Snider, Id.*

<u>Reasonable Possibility the New Evidence Would Have Changed the Outcome</u>

21

Regulations provide that a claimant's treatment received for relief of her pain and any other measure she has used to relieve her pain will be considered.  20 CFR §§ 404.1529(c)(3) and 416.929(c)(3)  Also considered is whether her pain restricts or limits her functioning.  The new evidence entered into the record by the AC reflects, among other things, Claimant's alleged intensity, persistence and limiting effects of pain.

<u>Conclusion</u>

Accordingly, it cannot be determined whether the ALJ's decision is supported by substantial evidence in light of "the record as a whole including any new evidence that the Appeals Council specifically incorporated into the administrative record."  The ALJ as the fact finder must assess the probative value of the additional evidence.  The ALJ must make a finding on the credibility of [Claimant's] statements based on a consideration of the entire case record pursuant to SSR 96-7p.

The undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to consider the entire record, including Exhibits 16E, 39F, 40F, 41F and 42F.  It cannot be determined whether substantial evidence supports the ALJ's denial of benefits because the fact finder, the ALJ, has not assessed the probative value of the supplemental evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 12) and **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 15), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  April 15, 2016

Dwane L. Tinsley
United States Magistrate Judge